

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable M. W. Jones
County Auditor
Gaines County
Seminole, Texas

Dear Sir:

Opinion No. O-6433
Re: Legality of purchase and
establishment of Gaines
County Hospital

Your request for an opinion on the above stated matter has been received by this department. We quote from your last communication, as follows:

"In May, 1943, under the guise of an emergency health measure, the Commissioner's Court of Gaines County, Texas, provided for the purchase and operation of a County Hospital for the county. Enclosed are the original minutes dated May 10, 1943, paragraph 2 of sheet 3 showing that Seagraves hospital equipment could be bought for approximately $2,500.00, with additional purchases, remodeling and reconstruction to amount to not more than $10,000.00, thus resulting in a total expenditure of not exceeding $12,500.00; minutes dated May 13, 1943 authorizing an initial expenditure of $15,000.00 for the purchase of Seagraves hospital equipment instead of $2,500.00 originally provided; copy of contract entered into with Harry T. Davidson, M. D. and Carl W. Gerardy, M. D.; minutes dated May 15, 1943 providing for the transfer of $1,500.00 from the Jury Fund and $2,000.00 from the General Fund to the Hospital Fund, and for the purchase of a building at the price of $4,000.00 (in addition to the other expenditure of $15,000.00); and statement of receipts and disbursements of the Hospital Fund from May 13, 1943 to December 31, 1944. You will note that minutes for all transfers of funds and all expenditures for building and equipment are not enclosed.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M. W. Jones, page 2

"The Commissioners Court judicially determined that a grave emergency existed because of the removal from the county of the only hospital, and not because of any catastrophe or epidemic. The expenditures on the Gaines County Hospital exceeded the limitations of the amounts appropriated and the $500.00 limit for each $1,000,000.00 assessed valuation of property within said county. In view of the above, no elections were called in connection with the establishment of the hospital, and there has been no advertising for bids in connection with any of the purchases or expenditures.

"The Commissioner's Court is currently considering the investment of an additional amount of from $12,000.00 to $15,000.00 for enlargement and improvement of the property, with approximately $9,000.00 to be transferred from the Permanent Improvement Fund and the balance to be paid by warrants of the County.

"The $17,600.00 disbursement shown on the attached statement of receipts and disbursements of the Hospital Fund represents such items as pay of nurses and other employees, and is in addition to amounts paid by the county for maintenance of charity patients. No collections made for the account of the hospital have been paid to the County Collector.

"In-as-much as the legality of the establishment of the Gaines County Hospital has been questioned, I shall appreciate your opinion upon the legality of the following items:

"1. Purchase and initial investments;
"2. Transfers of funds;
"3. Assessment of taxes for the hospital fund;
"4. Proposed expenditure for addition to the hospital;
"5. Necessity of all money received by the hospital being accounted for to the Commissioner' Court and paid to the County Collector."

We are also in receipt of the accompanying data mentioned in your letter.

Honorable M. W. Jones, page 3

We are also in receipt of the supplemental request for an opinion from L. P. Smallin, Acting County Auditor, from which we quote as follows:

"(1) Is it possible for us to make payment for the contemplated addition to the hospital, by transferring monies from the Permanent Improvement Fund for this purpose.

"(2) May we transfer or use monies of other funds for the purpose of using the money for the maintenance or addition to the hospital.

"(3) May we issue warrants, if necessary, for an addition to the hospital."

The inquiries and data submitted raise certain questions pertaining to the authority of the commissioners' court with reference to (1) amendment of the county budget; (2) establishment, operation and maintenance of a county hospital; (3) creation of a debt against the county; and (4) transferring the constitutional funds of the county. We shall discuss the general aspects of the foregoing propositions, and, insofar as justified by the facts and information submitted, we shall answer the specific questions propounded.

(1) Authority of the Commissioners' Court to Amend the County Budget.

Amendments to the county budget must be made in compliance with the provisions of Article 689a-11, Vernon's Annotated Civil Statutes, which provides in part:

". . . When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the Court. Except that emergency expenditures, in case of grave public necessity, to meet unusual and unforeseen conditions which

Honorable M. W. Jones, page 4

could not, by reasonably diligent thought and
attention, have been included in the original
budget, may from time to time be authorized by
the Court as amendments to the original budget.
In all cases where such amendments to the ori-
ginal budget is made, a copy of the order of
the Court amending the budget shall be filed with
the Clerk of the County Court, and attached to the
budget originally adopted."

This department has consistently held that whether
a given situation is one which can be classified as an emer-
gency under the budget law, in order to authorize the commis-
sioners' court to amend the budget, is a question of fact
primarily to be passed upon by the commissioners' court.
This department has further held (opinion No. O-2315) that the
discretion of the commissioners' court is not absolute auth-
ority to expend county funds in the case of emergency, and is
final, only where the question is debatable or where the exis-
tence of an emergency is questionable. However, said court
has no authority to determine and declare that an emergency
exists and expend county funds therefor, where the facts
clearly show the contrary. This department has also consis-
tently held that a commissioners' court is not authorized to
expend county funds for purposes outside the scope of the legal
purpose for which the tax was levied.

2. Authority of the Commissioners' Court to Estab-
lish, Maintain and Operate a County Hospital.

The authority of the Commissioners' Court of Gaines
County to establish a county hospital is found under Chapter 5,
Title 71, Article 4478, V. A. C. S., which, in part, provides:

"The commissioners court of any county shall
have power to establish a county hospital and to
enlarge any existing hospitals for the care and
treatment of persons suffering from any illness,
disease or injury, subject to the provisions of
this chapter."

In construing the foregoing language, this depart-
ment held in Opinion No. O-4569 that unqualified general power
is conferred upon the commissioners' court to establish and
to enlarge hospitals for county purposes, although bonds are
not issued or contemplated as provided under other Articles
of the Title.

As to the authority of the commissioners' court with reference to the assessment, levying and collection of taxes for the maintenance and other necessary expenses of a county hospital, sub-division 3 of Article 4478, provides that the commissioners' court shall have the power "To cause to be assessed, levied and collected, such taxes upon the real and personal property owned in the county as it shall deem necessary to provide the funds for the maintenance thereof, and for all other necessary expenditures therefor."

With reference to the manner of disposition of funds collected by the county hospital, Art. 4485 provides:

"He (the superintendent) shall collect and receive all moneys due the hospital, keep an accurate account of the same, report the same at the monthly meeting of the board of managers, and transmit the same to the county collector within ten days after such meeting." (Parentheses ours)

As to the method of expending funds for the benefit of the county hospital, we refer you to the following language of Article 4484:

". . . The board shall certify all bills and accounts, including salaries and wages, and transmit them to the commissioners court, who shall provide for their payment in the same manner as other charges against the county are paid." (underscoring ours)

3. Creation of Debt Against the County.

Section 7, Article 11 of the Constitution of Texas, in part, provides:

". . . No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund. . . ."

Honorable M. W. Jones, page 6

The foregoing provision is a restriction and limitation, and it has been held that when no authority exists to levy a tax to pay a debt, no power can exist to incur the debt. (Lasater v. Lopez, (Civ. App.) 202 S. W. 1039, affirmed 110 Tex. 179, 217, S. W. 373.) We point out that the term "debt" as used in the above constitutional provision is to be distinguished from obligations payable from current revenues. The term "debt", above referred to, has been defined "as comprehending any pecuniary obligation imposed by contract, except such as is at thedate of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the commissioners' court." (11 Tex. Jur., Sec. 121, p. 670). If at the time a contract is made, it is contemplated that any part of the purchase price is to be paid from taxes levied and collected for future years, the obligation constitutes a "debt" within the meaning of the constitutional prohibition.

The legislature has authorized counties to create "debts" within the meaning of the constitution by authorizing the issuance of bonds and time warrants, and we are unable to find any legal means by which a commissioners' court may obligate the tax revenues of the county for a future year other than by complying with the statutory provisions as to the issuance of bonds and/or time warrants.

The requirements pertaining to competitive bidding and advertising for contracts for public works and as to the issuance of time warrants are set forth in Article 2368a, V. A. C. S. Due to the great length of said Article we shall not quote same herein in its entirety. Section 2 of said Article sets forth the requirements concerning advertising and competitive bidding for public works. We call attention, however, to the "proviso" of said section, which provides:

"... Provided, that in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of the citizens, or to preserve the property of such county or city, or in case of unforeseen damage to public property, machinery or equipment, this provision shall not apply; ..."

Honorable M. W. Jones, page 7


In the case of Hoffman v. City of Mt. Pleasant, 89 S. W. (2d) 193, the court, in construing the above quoted provision, held that a public calamity was not essential to bring a situation within the exception. In connection with this matter, the court said:

"The word 'preserve' and 'protect', as applied to public health, carry the idea of timely, efficient and effective action which keeps intact and unimpaired the good health of the citizens in advance of its impairment. They cannot reasonably be construed as pertaining solely to the improvement and repair of health already impaired or in immediate peril because of a public calamity."

Thus, in view of the foregoing, a finding by the commissioners' court that a situation existed necessitating certain public improvements in order to keep unimpaired the health of the citizens of the county would be sufficient to authorize the letting of contracts therefor without the competitive bidding and notices required in Sec. 2 of Article 2368a.

We call attention, also, to Sec. 3 of said act which provides:

"When it shall be the intention of the Commissioners' Court, or of the governing body, to issue time warrants for the payment of all or any part of the proposed contract, the notice to bidders required under Section 2 of this Act shall recite that fact, setting out the maximum amount of the proposed time warrant indebtedness, the rate of interest such time warrants are to bear, and the maximum maturity date thereof."

Section 5 of said Article provides, in part:

"The notice required in Sections 2 and 3, and the right to referendum election defined in Section 4, shall not be applicable to expenditures payable out of current funds or bond funds, as above described, not to additional expenditures by counties unless in excess of Five

Hundred Dollars ($500.00) for each One Million Dollars ($1,000,000.00), or a part thereof, of taxable property in said county, according to the last approved tax rolls; . . ."

In the latter protion of said section we find the following "provise":

"Provided, that in case of public calamity caused by fire, flood, storm, or to protect the public health, or in case of unforeseen damage to public property, machinery or equipment, the Commissioners' Court or the governing body may i-sue such time warrants as are necessary to provide for the immediate repair, preservation or protection of public property and the lives and health of the citizens of such county or city, irrespective of the limitations contained in this Section and the restrictions imposed by Sections 2, 3 and 4 hereof."

Thus, if the expenditures are in excess of $500.00 for each $1,000,000.00 of tax valuation of the county, the notices required by the Act must be given before the commissioners' court could legally issue time warrants, unless the facts under the particular situation were such that the commissioners' court would be justified in making the required finding of fact, whereby the above quoted "proviso" would be applicable.

## 4. Transfer of the Constitutional Funds of the County.

Section 9, Article 8, Constitution of Texas, prescribes the maximum rate of taxes for the various constitutional funds, and it is well settled that the commissioners' court has no power to transfer money from one fund to another, or to expend, for one purpose, tax money raised ostensibly for another. This department has written many opinions dealing with the matter of transfer of funds. We are enclosing copies of Opinions Nos. O-601, O-4813 and O-5595 which we believe will be pertinent to your inquiry as to the transfer of funds.

With reference to your question as to the legality of the initial purchase or acquisition of the county hospital in Gaines County, we note that a part of the payment for the hospital was by means of time warrants. We cannot pass upon the legality of the issuance of these time warrants, for the minutes submitted do not disclose the total amount of the warrants to be issued, and we are unable to determine whether the total amount of warrants issued justifies the tax rate levied for their payment. Also, we cannot determine any fact questions as to whether said issuance of time warrants properly came within any exception to those provisions of Article 2368a requiring the giving of notices, etc. in connection with the

issuance of time warrants. Neither do we have a copy of the warrants issued whereby it would be possible to determine whether said warrants conformed to the order authorizing their issuance or were otherwise legal.

It is our opinion that the transfer of funds from the jury and general funds was unauthorized by law, for reasons hereinbefore discussed. We shall not attempt to pass upon other transfers mentioned in the absence of the minutes pertaining to such transfers.

It is our opinion that the contract of sale for the hospital equipment is not in conformity with the statutory provisions pertaining to the creation of a debt against the county. We know of no constitutional or statutory provision authorizing the creation of an obligation against the county out of the revenues of future years by means of vendor's lien notes, bearing a stipulated rate of interest.

Although it appears that some of the transactions with reference to the purchases for the benefit of the county hospital were not in pursuance of the statutory or constitutional authority of the commissioners' court, we are not in possession of sufficient facts to express an opinion as to the legal or equitable rights of the county or other parties which might be involved with respect to the present status of the affairs of the county hospital of Gaines County. The proposition is broad with many aspects, and it would be necessary for us to have all of the facts pertaining to some specific question or questions arising in connection with this matter as it may pertain to the rights of the county or other parties, rather than endeavor to discuss each of the innumerable possibilities in connection with such a broad and general proposition. We therefore decline to express a general opinion in answer to your inquiry as to the legality of the purchase of the Gaines County Hospital, as related to its present status and to the rights of the county or other parties which may be involved.

As to your question pertaining to the contemplated transfer of constitutional funds, we believe that our discussion hereinbefore given, together with the enclosed copies of opinions, will be applicable to this inquiry.

With reference to your inquiry as to the levy of taxes for the maintenance of the hospital, we point out that under the provisions of Art. 4478, a county commissioners' court is authorized to establish a hospital, and in connection with said authority, the commissioners' court is empowered, under sub-division 3, Art. 4478, to levy taxes for the maintenance of same. Also we point out that all expenditures for said hospital should be made in conformity with the county budget and authorized amendments thereto, and all accounts should be allowed by the commissioners' court in the same manner that other accounts against the county are allowed.

Honorable M. W. Jones, page 10


(Art. 4484) With reference to contemplated issuance of warrants for addition to the hospital, the issuance of time warrants for public improvements is governed by the provisions of Art. 2368a. However, in the absence of necessary facts as to the contemplated maintenance expenses and additions to the hospital referred to, insofar as such maintenance expense or improvements may be related to or dependent upon the legality of the original acquisition of said hospital, and in view of the fact that, for reasons heretofore discussed, we are unable to determine all matters with reference to the legality of the original acquisition of the hospital as related to its present status, we likewise decline to pass upon your question as to the levying of taxes for the purpose of maintaining such hospital and for paying the debt service on the contemplated issuance of time warrants for an addition to such hospital.

With reference to your question pertaining to the "necessity of all money received by the hospital being accounted for to the Commissioners' Court and paid to the County Collector", under the provisions of Article 4485, the superintendent of the county hospital is required to "collect and receive all moneys due to the hospital, keep an accurate account of the same, report the same at the monthly meeting of the board of managers, and transmit the same to the county collector within ten days after such meeting." (underscoring ours) Under the provisions of Article 4484 and 4485, the board of managers is required to make an annual report to the commissioners' court, and said report shall have incorporated therein proper accounts and records of the business and operations of the hospital.

Due to the limited facts and information submitted and due to the broad aspects of certain questions submitted, our answers to your various questions have been confined within the limitations of the available facts. We trust, however, that the above and foregoing will be of some assistance in connection with the matters raised by your inquiry, as well as the questions submitted by the Acting Auditor.

Honorable M. W. Jones, page 11

We are returning herewith the records submitted by
you. We are also addressing a copy of this opinion to the
Acting Auditor of your county.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

J. A. Ellis
Assistant

JAE:ddt

Enclosures

APPROVED JUL 24, 1945

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY CHAIRMAN